No. 43,683

Doyn Aircraft, Inc., *Appellant,* v. Ken-Mar Airpark, Inc., E. E. Isaacs, George Rabatin, Leonard Crouch and John Dean, *Appellees.*

(392 P. 2d 935)

Opinion filed June 6, 1964.

*F. C. McMaster,* of Wichita, argued the cause, and *P. K. Smith* and *Stanford J. Smith,* of Wichita, were with him on the briefs for the appellant.

*Donald A. Bell,* of Wichita, argued the cause, and *Lawrence Weigand, Lawrence E. Curfman, Byron Brainerd, Charles W. Harris, Orval J. Kaufman, J. Ruse McCarthy, J. L. Weigand, Spencer L. Depew, Paul M. Buchanan,* and *Charles R. Moberly,* of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Wertz, J.: This was an action brought by Doyn Aircraft, Inc., plaintiff (appellant), hereinafter referred to as Doyn, against Ken-Mar Airpark, Inc., E. E. Isaacs, George Rabatin, Leonard Crouch and John Dean, defendants (appellees), hereinafter referred to as Ken-Mar, to recover for the wrongful conversion of an airplane owned by Doyn.

Insofar as pertinent to the determinative issue involved, the facts are as follows: On February 29, 1960, Ken-Mar sold and delivered an airplane to Doyn. Doyn made the down payment on the airplane and financed the balance by a note and mortgage providing for thirty-six monthly payments in the amount of $418.71 each, beginning March 29, 1960. The note and mortgage were immediately endorsed and assigned by Ken-Mar to the Merchantile National Bank of Dallas, Texas, hereinafter referred to as the bank. Under the provisions of the mortgage, the mortgagor was to keep the airplane properly insured. The mortgage further provided:

". . . All insurance . . . policies shall include a provision making loss payable to mortgagee as its interest may appear. . . . Should any loss occur to insured property, the mortgagee is hereby appointed attorney in fact for the mortgagor to make proof of loss if mortgagor fails to do so promptly, and to receipt for any sums collected under said policies which said sums, or

any part thereof, at the option of the mortgagee, may be applied as payment on the debts hereby secured, or to the restoration or repair of the property so destroyed or damaged. . . ."

The mortgage also provided:

". . . that if default be made in the payment of any part of the principal or interest . . . then the whole principal sum unpaid . . . shall immediately become due and payable at the option of the mortgagee.

. . . . . . . . . . . . . . .

"Upon default, Mortgagee may at once proceed to foreclose this mortgage in any manner provided by law, or . . . enter upon the premises where the said aircraft may be and take possession thereof . . . ."

Doyn defaulted on the May 29 payment. On June 7 or 8 the airplane sustained hail damage. After considerable negotiations between Doyn, Ken-Mar, the bank and the insurance company a settlement for the hail damage to the plane was reached about the middle of July and a check in the amount of $3,450 made payable to both Doyn Aircraft, Inc. and the Mercantile National Bank was received by Doyn from the insurance company.

At the time the check was received Doyn was in default on the May 29 and June 29 payments and had been contacted by Ken-Mar concerning the payments being delinquent. Doyn told Ken-Mar that with the proceeds of the mentioned check it wanted the bank to credit its note for the two back payments as well as two future payments, that is, the July and August payments, and return the balance of $1,800 to Doyn. Ken-Mar, through its agent, E. E. Isaacs, advised Doyn's president, Galyn Means, it would be necessary to get the bank's approval, and suggested they telephone the bank. Isaacs called the bank and talked to the bank's discount officer, Mr. Wood. Mr. Means, in the presence of Isaacs, told Wood about the insurance settlement and the aforementioned proposal with reference to the application of the proceeds of the insurance check. Means advised Wood the airplane had not been repaired nor did he think it necessary to make the repairs as it would not affect the plane's airworthiness. Mr. Wood stated to Means this arrangement was acceptable to the bank and cautioned Means to be sure to endorse the check before it was forwarded to the bank since it was payable to both Doyn and the bank. Subsequently Means had the check endorsed by Doyn and forwarded it to the bank in accordance with the oral agreement.

After the bank received the check it breached the oral agreement made between Wood, Means and Isaacs by crediting Doyn with

the two back payments in the sum of $837.42, applying $2,500 of the check to reduce the indebtedness, and then issuing a check to Doyn for only $112.58, as evidenced by a letter dated July 25, 1960, from the bank to Doyn. The letter advised Doyn the next payment would be due July 29. The check received by Doyn was deposited to its account. Doyn's president, Means, then sought legal counsel, and on August 6 advised the bank by letter that Doyn was not in default on the mortgage inasmuch as it had prepaid the payments in the amount of $2,500 and would only owe the bank $12.26 with the December 29 payment, and requested the bank to change its records in accordance with the oral agreement. The letter further stated if no word was received from the bank by August 15, Doyn would assume the bank had complied with such change. The record discloses no reply to this letter.

Subsequently the bank reassigned the note to Ken-Mar, which company, through Isaacs, demanded possession of the plane, contending the note and mortgage were in default. Doyn refused to surrender possession and called Isaacs' attention to the oral agreement previously made between Isaacs, Wood and Means whereby the bank was to credit the May, June, July and August payments out of the insurance check and, therefore, no payments were in default. Isaacs replied, "Apparently when they [the bank] got the insurance settlement check down there the bank changed its mind."

Ken-Mar, through Isaacs, made several attempts to get the airplane, was unsuccessful, but finally, on September 1, 1960, found the plane at Flournoy's Flying Service where it had been left by Doyn for repairs. Ken-Mar, through Isaacs and the other three defendants herein, then took possession of the airplane and sold it.

At the conclusion of this and other evidence the court sustained the separate demurrers of defendants on the ground plaintiff's evidence failed to state a cause of action against them. Thereafter Doyn filed a motion for a new trial, which was overruled, and from these rulings Doyn has appealed.

The determinative issue in this case is whether or not the evidence was sufficient to make out a prima facie case of the bank's failure to apply the proceeds of an insurance settlement for damages

to the airplane in accordance with the oral agreement between Doyn, Ken-Mar and the bank.

Ken-Mar contends that the mortgage provided that the sums received under the insurance policy, at the option of the bank, might be applied as payment of the debt secured or to the restoration or repair of the property so destroyed. It may be conceded that in the absence of an agreement to the contrary Ken-Mar's contention is correct. Doyn contends that in its oral agreement with the bank the bank was to credit the note and mortgage for the two delinquent payments and two future payments and return the balance of approximately $1,800 to Doyn; that Doyn endorsed the insurance settlement check, forwarded it to the bank in accordance with that agreement, and had the bank applied the payments in accordance with the oral agreement, Doyn would not have been in default at any time prior to Ken-Mar's conversion of the plane.

There is merit to Doyn's contention. The evidence clearly reveals that both Ken-Mar and the bank agreed with Doyn, through Means, that if Doyn would endorse the insurance settlement check and forward it to the bank, the bank would apply the proceeds of that check in accordance with the mentioned oral agreement. Had such oral agreement been carried out by the bank, there would have been no default in payments on the part of Doyn at the time of the conversion of the plane. Under the circumstances, the oral agreement was supported by sufficient consideration. We are of the opinion plaintiff's evidence was sufficient to make out a prima facie case against the defendants for conversion of the airplane.

Ken-Mar contends the acceptance and deposit of the $112.58 check forwarded by the bank to Doyn on July 25 estops Doyn from questioning the application of funds made by the bank to reduce the indebtedness on the note and mortgage. We cannot agree with this contention inasmuch as Doyn immediately sought legal counsel and thereafter on August 6, by letter, objected to the bank's breaching the oral agreement by applying the insurance check to the reduction of the note and mortgage, advised the bank Doyn was not in default, requested the bank to change its records as to the application of the funds in accordance with the oral agreement, and stated

if no word was received from the bank by August 15, Doyn would assume the bank had complied with such change. Doyn received no reply to its letter. Under these circumstances it cannot be said Doyn acquiesced in the bank's application of the funds to the note and mortgage.

In view of what has been said, other questions raised need not be discussed. The judgment of the trial court is reversed and the case is remanded for further proceedings.